SHELL, Admr., et al. Appellees,

v.

DREW & WARD CO., L.P.A., et al., Appellants.

[Cite as *Shell v. Drew & Ward Co., L.P.A.*, 178 Ohio App. 3d 163, 2008-Ohio-4474.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070863.

Decided Sept. 5, 2008.

164

Helmer, Martins, Rice & Popham, Co., L.P.A., James B. Helmer, Paul B. Martins, Julie W. Popham, and Erin M. Campbell; and Taft, Stettinius & Hollister, L.L.P. and Jeanne M. Cors, for appellees.

Rendigs, Fry, Kiely & Dennis, L.L.P., W. Roger Fry, and Arthur E. Phelps Jr., for appellant Drew & Ward Co., L.P.A.

Coolidge Wall Co., L.P.A., and Terence L. Fague; and Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, and Terrence L. Goodman, for appellants Richard G. Ward and Richard H. Ward.

---

Per Curiam.

{¶ 1} This is an interlocutory appeal from the trial court's judgment settling various discovery issues in a malpractice action in which defendants-appellants Drew & Ward Co., L.P.A., Richard G. Ward ("Nick Ward"), and Richard H. Ward ("Dick Ward"), collectively referred to as Drew & Ward, had invoked both the attorney-client privilege and the work-product doctrine.

### Factual Background

{¶ 2} The plaintiffs-appellees in this case are representatives of the estate of John F. Koons III ("Bud Koons"). Dick Ward was a lifelong friend of Bud Koons, and both Dick Ward and the law firm of Drew & Ward had represented Bud Koons on various legal matters for numerous years. Bud Koons passed away in March 2005.

{¶ 3} Shortly after Koons's death, Nick Ward and the law firm of Drew & Ward filed suit against Koons's estate on behalf of Michael Cundall, Koons's nephew. The legal action initiated by Nick Ward, which we refer to as the "Cundall litigation," alleged that Koons had breached a fiduciary duty to Cundall and his relatives with respect to Koons's role as trustee over a trust that the Cundall relatives had been beneficiaries of. That legal action is currently pending.

{¶ 4} After Nick Ward filed suit against Bud Koons's estate, representatives of the estate filed this action against Drew & Ward, Nick Ward, and Dick Ward. For convenience, we refer to the plaintiffs as "Shell," because Keven Shell is the administrator of Koons's estate. In this action, Shell alleged breach of fiduciary duty, breach of contract, replevin, conversion, and malpractice. Specifically, Shell asserted that the defendants had utilized and relied on confidential documents and information that they had obtained as legal representatives of Bud Koons to bring the cause of action against Koons's estate.

{¶ 5} During this litigation, Shell sought discovery of various documents that Drew & Ward argued were privileged under either the work-product doctrine or the attorney-client privilege. Included in these documents were the fee arrangement between Nick Ward and Michael Cundall, Drew & Ward's billing records for the Cundall litigation, correspondence accompanying these billing records,

and letters from Drew & Ward to Michael Cundall's relatives, who had also been named as defendants in the Cundall litigation.

{¶ 6} Shell filed a motion to compel Drew & Ward to produce these documents. The allegedly privileged documents were submitted to the trial court for an in camera review, and the trial court held a hearing on the motion to compel. As relevant to this appeal, the trial court issued the following rulings.

{¶ 7} "Defendants' billing records and fee agreements regarding their representation of Michael Cundall are relevant. Pursuant to the authority provided in Plaintiffs' Motion to Compel, these documents are not protected by the attorney-client privilege or by the work-product doctrine. The defendants shall produce all billing records and fee agreements. The fee agreements shall be produced in an unredacted form. The billing statements shall be produced. The only permitted redactions shall be any areas of those statements that comply with *Grace v. Mastruserio,* [1st Dist. No. C–060732, 2007-Ohio-3942, 2007 WL 2216080]. This production also includes the letters accompanying the billing statements and the proposed fee agreements. It also includes the March 22, 2006 letter to 11 people that was provided for *in camera* inspection.

{¶ 8} "This Court finds that there is no attorney-client privilege between Defendants and any family members of Michael K. Cundall. Further, the work-product doctrine does not protect any communications between Defendants and the family members of Michael K. Cundall."

{¶ 9} Drew & Ward, Nick Ward, and Dick Ward filed this interlocutory appeal from the trial court's ruling. In two assignments of error, they argue that the trial court erred in granting Shell's motion to compel attorney work product and attorney-client privileged billings, invoices, fee contracts, and correspondence, and that the trial court erred in determining that neither the attorney-client privilege nor the work-product doctrine applied to their communications with the relatives of Michael Cundall.

{¶ 10} We review the trial court's rulings on these issues de novo. As this court has previously stated, "[t]he management of the discovery process is reviewed under an abuse-of-discretion standard, but questions of privilege, including the propriety of disclosure, are questions of law and are reviewed de novo."[1]

### Nature of the Litigation

{¶ 11} Before we analyze the merits of this case, it is necessary to stress that the unique nature of this litigation has guided our resolution of the parties' dispute.

---

1. *Roe v. Planned Parenthood,* 173 Ohio App.3d 414, 2007-Ohio-4318, 878 N.E.2d 1061, ¶ 18, discretionary appeal allowed, 117 Ohio St.3d 1443, 2008-Ohio-1279, 883 N.E.2d 459.

{¶ 12} In this case, the attorney-client privilege that is being asserted arises from the relationship between Drew & Ward and Michael Cundall. Similarly, assertions of the work-product doctrine concern documents prepared during the relationship between Drew & Ward and Michael Cundall.

{¶ 13} But neither party to these privileges is seeking discovery of the documents that these privileges are alleged to protect. Rather, Keven Shell, a third party not privy to the relationship between Drew & Ward and Michael Cundall, is seeking discovery of these documents. If this case had involved a more typical dispute between an attorney and client, our holding might likely be different.

{¶ 14} Further, our analysis is based on the nature of the specific documents submitted for in camera review in this case. The types of documents at issue, including fee agreements and billing records, may generally be executed in many different formats, some of which contain more information than others. Consequently, the conclusions reached in this decision are based on the nature of the documents submitted to the trial court in this case.

{¶ 15} With these things in mind, we consider the claims in this interlocutory appeal.

### Fee Agreements

{¶ 16} Shell sought discovery of the fee agreements between Drew & Ward and Michael Cundall. The trial court determined that neither the attorney-client privilege nor the work-product doctrine applied to these fee agreements, and it concluded that any fee agreements were discoverable without redaction.

{¶ 17} A brief discussion of both the attorney-client privilege and the work-product doctrine is necessary. In this case, various documents, rather than testimony, are alleged to be protected under the attorney-client privilege. Consequently, we are concerned with the common-law attorney-client privilege.[2]

{¶ 18} The purpose of the common-law attorney-client privilege is to " 'encourage full and frank communication between attorneys and their clients.' "[3] The privilege protects communications made between an attorney and client relating to the purposes for which legal advice was sought, unless the privilege is waived.[4] The work-product doctrine, on the other hand, includes "documents and

---

2.  *Grace v. Mastruserio*, 1st Dist. No. C–060732, 2007-Ohio-3942, 2007 WL 2216080, ¶ 17.

3.  Id. at ¶ 18, quoting *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584.

4.  Id. at ¶ 19.

tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative."[5]

{¶ 19} We initially note that any fee agreements in this case are certainly relevant to Shell's underlying malpractice claim. To succeed on the malpractice claim, Shell must essentially prove that Drew & Ward undertook the Cundall litigation while still representing Koons and his estate, or that Drew & Ward utilized documents obtained during its representation of Koons to bring the Cundall litigation. The fee agreements in this case will indicate the timing of when Drew & Ward initiated the Cundall litigation.[6] And as Shell correctly asserts, the fee agreements will also help to demonstrate Drew & Ward's financial incentives in filing the Cundall litigation.

{¶ 20} This court's review of the documents submitted in camera to the trial court reveals two potential fee agreements between Michael Cundall and Drew & Ward. But each of these fee agreements contains information clearly subject to both the attorney-client privilege and the work-product doctrine. The fee agreements are either contained within or accompanied by letters containing information about Drew & Ward's assessment of the litigation, as well as how the litigation was proceeding.

{¶ 21} This information is unquestionably protected and is not subject to disclosure. But the thrust of Shell's lawsuit does require disclosure of the dates that these two fee agreements were either proposed or executed. It further requires disclosure of the controlling modified fee contract executed between Nick Ward and Michael Cundall. We stress that the letter from Ward to Cundall accompanying the modified fee agreement is not discoverable, as it contains privileged information.

{¶ 22} Because the fee agreements contain privileged information, the trial court erred in ordering their complete disclosure. Only those portions of the fee agreements not containing privileged information are subject to disclosure.

{¶ 23} To summarize our holding, based on the nature of the fee agreements in this case, Drew & Ward is ordered to disclose the date of its first proposed fee agreement with Cundall. Drew & Ward must also disclose the date upon which the modified fee contract was executed, as well as the terms included within that modified contract, but it is not required to disclose the letter to Cundall accompanying this modified agreement.

---

5. Id. at ¶ 28. See also Civ.R. 26(B)(3).

6. Nick Ward had previously represented Michael Cundall on matters not related to the Cundall litigation.

## Billing Records

{¶ 24} Shell also sought discovery of Drew & Ward's billing records for the Cundall litigation. The trial court determined that the billing records were not protected by either privilege. The court ordered the records produced in their entirety, but did allow for the redaction of any statements that complied with this court's holding in *Grace v. Mastruserio*.

{¶ 25} Following our review of the record, we cannot agree with the trial court's conclusion. The billing records in this case are extremely detailed. They contain the names of persons to whom Nick Ward spoke about the Cundall litigation and the types of documents Ward reviewed in preparation for the Cundall litigation, as well as different areas of law that Ward had researched in preparation for the litigation.

{¶ 26} The billing records in this case are not limited to explaining the fee, the type of work billed for, or the purpose of the litigation. Certain billings are in this concise format. But a majority of the billing records reflects legal strategies of the attorney and provides insight about the attorney's thoughts concerning the direction of the litigation. We are mindful of the potential chilling effect that a broad disclosure of these records could have on the entire legal community.

{¶ 27} Accordingly, we conclude that the substance of the billing records in this case is protected by the attorney-client privilege. Moreover, we are not persuaded that the billing records, in an unredacted form, are necessary for Shell to succeed on his malpractice claim. To be certain, the dates that Drew & Ward billed for the Cundall litigation are indeed relevant to demonstrate the core of Shell's malpractice claim. The dates upon which bills for the Cundall litigation were submitted will aid Shell in establishing whether Drew & Ward committed malpractice or a breach of fiduciary duty by engaging in simultaneous representation.

{¶ 28} Consequently, because the billing records contain attorney-client privileged information, we conclude that the trial court erred in determining that they were not privileged. These billing records are not discoverable in an unredacted form. But certain portions of the billing records are subject to disclosure. The dates that Drew & Ward billed for the Cundall litigation, as well as the name of the attorney doing the work, are not privileged and are relevant to the underlying action. Consequently, Drew & Ward is ordered to produce its billing records for the Cundall litigation in a redacted form, listing only the dates on which work was billed, as well as the name of the attorney performing the work, beginning in March 2005.

{¶ 29} Having determined that both the fee agreements and the billing records in this case contain privileged information, we determine that the trial court

erred in concluding otherwise and in ordering their disclosure. These documents are only subject to disclosure in the redacted formats we have described. Consequently, Drew & Ward's first assignment of error is sustained.

### Relationship with Other Cundall Family Members

{¶ 30} In its second assignment of error, Drew & Ward argues that the trial court erred in determining that no attorney-client relationship existed between Drew & Ward and any family members of Michael Cundall and that the work-product doctrine did not protect any communications between Drew & Ward and Cundall's family members.

{¶ 31} The communications at issue in this assignment of error involved 11 family members of Michael Cundall. These family members had also been named as defendants in the underlying Cundall litigation.

{¶ 32} Following our review of the documents submitted for in camera inspection, we conclude that the trial court correctly determined that a majority of these communications was not protected by the attorney-client privilege or the work-product doctrine.

{¶ 33} At the time that most of these communications occurred, no attorney-client relationship existed between Drew & Ward and the Cundall relatives. In fact, Drew & Ward had made these relatives adverse parties by naming them as defendants in the Cundall litigation. Moreover, these communications were not protected by the work-product doctrine. The communications were not prepared in anticipation of litigation on behalf of Michael Cundall and appear to have been sent as a courtesy to these relatives.

{¶ 34} The record does indicate that, at one time, Drew & Ward did form an attorney-client relationship with two of these family members. On May 26, 2006, a fee contract and a multiple-representation agreement were executed between Nick Ward and Michael Cundall Jr. And on July 6, 2006, a fee contract and a multiple-representation agreement were executed between Nick Ward and Courtney Fletcher Cundall. These attorney-client relationships were brief, as the record further indicates that on August 10, 2006, both Michael Cundall Jr. and Courtney Fletcher Cundall retained new counsel to replace Nick Ward.

{¶ 35} Any communications involving any Cundall relative other than Michael Cundall Jr. and Courtney Fletcher Cundall are not privileged and are subject to disclosure. Any communication involving Michael Cundall Jr. and Courtney Fletcher Cundall prior to the dates that they executed fee contracts and multiple-representation agreements with Nick Ward are not privileged and are subject to disclosure. We further conclude that the fee contracts executed between Nick Ward and these two relatives are subject to disclosure. They contain no

privileged information and are relevant to Shell's underlying malpractice claim. But the multiple-representation agreements do contain privileged information concerning Ward's assessment of the litigation and are not subject to disclosure.

{¶ 36} To summarize our conclusion, all communications involving the relatives of Michael Cundall are not privileged and are subject to disclosure except for the multiple-representation agreements executed with Michael Cundall Jr. and Courtney Fletcher Cundall.

{¶ 37} Drew & Ward's second assignment of error is sustained in part and overruled in part.

### *Conclusion*

{¶ 38} The fee agreements executed between Drew & Ward and Michael Cundall are intertwined with information subject to both the work-product doctrine and the attorney-client privilege. Consequently, the only information relating to these fee agreements that is subject to disclosure consists of the date of the first proposed fee agreement and both the date and terms of the modified fee contract.

{¶ 39} The billing records in this case are protected by the attorney-client privilege. But because these records are relevant to the underlying litigation, they are discoverable in a redacted format that does not contain privileged information. Drew & Ward must disclose the dates that it billed for the Cundall litigation, as well as the name of the attorney performing the work, beginning in March 2005.

{¶ 40} Because a majority of the communications between Drew & Ward and relatives of Michael Cundall was not protected by the attorney-client privilege or the work-product doctrine, they are subject to disclosure and must be produced. But because a brief attorney-client relationship did exist between Drew & Ward and two of Michael Cundall's relatives, the multiple-representation agreements executed between these parties are privileged and are not subject to disclosure.

{¶ 41} The trial court's judgment is affirmed in part and reversed in part, and this case is remanded for further proceedings in accordance with the terms of this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

SUNDERMANN, P.J., and HENDON and DINKELACKER, JJ., concur.