# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED

April 10, 2014

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1172

STATE OF WEST VIRGINIA EX REL.
MONTPELIER US INSURANCE COMPANY
AND CHARLSTON, REVICH & WOLLITZ LLP,
Petitioners

V.

HONORABLE LOUIS H. BLOOM,
JUDGE OF THE CIRCUIT COURT OF
KANAWHA COUNTY, WEST VIRGINIA;
JAMES M. BUCKLAND; B&B TRANSIT, INC.;
B&D SALVAGE, INC.; AND TIM'S SALVAGE, INC.,
Respondents

---

## PETITION FOR WRIT OF PROHIBITION

## WRIT GRANTED AS MOULDED

---

Submitted: March 5, 2014
Filed: April 10, 2014

Lee Murray Hall
Sarah A. Walling
Jason D. Bowles
Jenkins Fenstermaker, PLLC
Huntington, West Virginia
Attorneys for Petitioner,
Montpelier Insurance Company

Ancil G. Ramey
Charles F. Johns

Guy R. Bucci
Bucci, Bailey & Javins, L.C.
Charleston, West Virginia

F. Alfred Sines, Jr.
Victoria L. Casey
Charleston, West Virginia
Attorneys for Respondents,
James M. Buckland,
B&B Transit, Inc.,

**Mark Jeffries**
**Steptoe & Johnson PLLC**
**Bridgeport, West Virginia**
**Attorneys for Petitioner,**
**Charlston, Revich & Wollitz**

**B&D Salvage, Inc., and**
**Tim's Salvage, Inc.**

**The Opinion of the Court was delivered PER CURIAM.**

**SYLLABUS BY THE COURT**

1. "In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential." Syllabus point 2, *State v. Burton*, 163 W. Va. 40, 254 S.E.2d 129 (1979).

2. "The burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syllabus point. 4, *State ex rel. U.S. Fidelity and Guaranty Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).

3. "To determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." Syllabus point 7, *State ex rel. United Hospital Center, Inc. v. Bedell*, 199 W. Va. 316, 484 S.E.2d 199 (1997).

4. "Rule 26(b)(3) of the West Virginia Rules of Civil Procedure makes a distinction between factual and opinion work product with regard to the level of necessity

that has to be shown to obtain their discovery." Syllabus point 7, *In re Markle*, 174 W. Va. 550, 328 S.E.2d 157 (1984).

5.      "The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried.  However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence." Syllabus point 4, *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

**Per Curiam:**

This case was brought under the original jurisdiction of this Court by Montpelier US Insurance Company and Charlston, Revich & Wollitz LLP (collectively "Petitioners"), seeking a writ of prohibition to prevent enforcement of a discovery order of the Circuit Court of Kanawha County.[1] The circuit court's order required the Petitioners to disclose allegedly privileged documents to the plaintiffs below: James M. Buckland's B&B Transit, Inc.; B&D Salvage, Inc.; and Tim's Salvage, Inc. (collectively "Respondents").[2] In this proceeding, the Petitioners contend that the documents in question are protected by the attorney-client privilege and the work product doctrine, and that they were not relevant to any issue in the case. Upon consideration of the parties' briefs and argument, the submitted appendix, and the pertinent authorities, the writ of prohibition is hereby granted as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case has its origins in an action for property damage brought by Jason and Gina Corrick (the "Corricks") against B&B Transit.[3] The Corricks filed their lawsuit in

---

[1]Pursuant to Article VIII, Section 3, of the West Virginia Constitution, this Court has original jurisdiction in prohibition proceedings.

[2]James M. Buckland is the President of B&B Transit, Inc.; B&D Salvage, Inc.; and Tim's Salvage, Inc.

[3]The Corricks also sued the West Virginia Department of Environmental
(continued...)

1

Logan County in January 2012, alleging that B&B Transit "negligently and unlawfully caused a landslide" that damaged their home. B&B Transit filed a notice and coverage claim with its insurer, Montpelier US Insurance Company ("Montpelier"). In February 2012, Montpelier's national coverage counsel, Charlston, Revich & Wollitz ("CRW"), notified B&B Transit that the policy it purchased from Montpelier did not provide coverage for the Corricks' claims. Specifically, CRW informed B&B Transit that the policy had a subsidence exclusion that did not cover property damage "arising out of or aggravated by the subsidence of land as a result of landslide." In January 2013, the Corricks amended their complaint by taking out the language which alleged the damage was caused by a "landslide." After the complaint was amended, Montpelier retained counsel for B&B Transit and provided a defense. Montpelier settled the case against B&B Transit in October 2013.

In November 2012, while the Corricks' original complaint was still pending, the Respondents filed a first-party bad faith claim[4] against the Petitioners.[5] In February 2013, the Respondents filed an amended complaint.[6] While the case was pending, the Respondents

---

[3](...continued)
Protection and the State of West Virginia.

[4]The record does not disclose why the action was filed by four plaintiffs when only B&B Transit was sued by the Corricks.

[5]The Respondents named additional defendants in the lawsuit.

[6]The original complaint was not made part of the record, so we do not know
(continued...)

2

served discovery requests on the Petitioners.[7] CRW opposed disclosure of certain requested documents based upon the attorney-client privilege, work product doctrine, and relevancy. The Respondents filed a motion to compel disclosure of the documents. The circuit court referred the matter to a discovery commissioner.

The discovery commissioner reviewed, *in camera*, the documents objected to by CRW and held a hearing on the matter. The discovery commissioner subsequently issued a recommended decision that required CRW to disclose (1) copies of any agreement or contract with Montpelier, including billing statements;[8] (2) copies of any commercial liability coverage opinion letters provided to Montpelier prior to the claim by the Corricks;[9] (3) copies of any coverage opinion letters provided to Montpelier finding coverage for an alleged claim;[10] and (4) copies of any seminar or training materials prepared for any insurer or

---

[6](...continued)
what differences existed between the two complaints.

[7]The Petitioners have separate counsel.

[8]These documents were tendered pursuant to Respondents' Request for Production No. 10.

[9]These documents were tendered pursuant to Respondents' Request for Production No. 11.

[10]These documents were tendered pursuant to Respondents' Request for Production No. 20.

3

industry group related to coverage interpretation or extra-contractual liability.[11] The Petitioners filed objections to the discovery commissioner's recommendation.[12] On November 12, 2013, the circuit court entered an order adopting the discovery commissioner's recommendation. The Petitioners thereafter filed the instant petition for a writ of prohibition.[13]

## II.

## STANDARD OF REVIEW

In this proceeding, we are asked to review a discovery order by the circuit court that adopted recommendations of a discovery commissioner. We have established that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992). Insofar as it is an extraordinary remedy, "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). In

[11]These documents were tendered pursuant to Respondents' Request for Production No. 22.

[12]The discovery commissioner appears to have made a recommendation on other matters that are not part of this proceeding.

[13]The Petitioners filed a joint petition.

cases where a trial court is alleged to have exceeded its authority, we apply the following

standard of review:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).  With the

foregoing standards as our foundation, we now consider the merits of the Petitioners' request

for a writ of prohibition.

# III.

## DISCUSSION

The Petitioners have set out their arguments in three parts: (1) attorney-client privilege applied to three types of documents, (2) work product doctrine applied to all the documents, and (3) relevancy of the documents. We will examine the issues separately.[14]

### A. *Application of the Attorney-Client Privilege*

The Petitioners argue that the attorney-client privilege prevented disclosure of (1) copies of any commercial liability coverage opinion letter provided to Montpelier prior to the claim by the Corricks; (2) copies of coverage opinion letters provided to Montpelier finding coverage for an alleged claim; and (3) copies of any seminar or training materials prepared for any insurer or industry group related to coverage interpretation or extra-contractual liability. We will examine the first two issues together and the third issue separately. However, before doing so, we will set out some general principles that will guide our analysis.

---

[14]In anticipation of an argument by the Respondents, the Petitioners have asked this Court not to consider the application of the crime-fraud exception to disclosure of the documents at issue. The Petitioners argue that the crime-fraud exception was not relied upon by the discovery commissioner nor the circuit court. The Respondents have asked this Court to apply the crime-fraud exception to the documents. We decline to address the crime-fraud issue on the merits because it was not relied upon by the discovery commissioner or circuit court, nor was it presented below by the Respondents. *See* Syl. Pt. 4, *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 157 W. Va. 93, 199 S.E.2d 308 (1973) ("This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.").

"Confidential communications made by a client or an attorney to one another are protected by the attorney-client privilege." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 26(b)(1), at 693 (4th ed. 2012). This Court has noted that "the attorney-client privilege historically belongs to the client." *State of West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W. Va. 705, 714, 601 S.E.2d 25, 34 (2004).[15] It also has been recognized that "[t]he fact that the client is a corporation does not vitiate the attorney-client privilege." *Southeastern Pennsylvania Transp. Auth. v. Caremarkpcs Health*, 254 F.R.D. 253, 257 (E.D. Pa. 2008). In syllabus point 2 of *State v. Burton*, 163 W. Va. 40, 254 S.E.2d 129 (1979), this Court set forth a three-prong test to determine whether the attorney-client privilege may be asserted to prevent disclosure of communication:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

We also have held that "[t]he burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syl. pt. 4, *State ex rel. U.S. Fid. and Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).

---

[15]Montpelier's standing to join this proceeding is due to the fact that it was CRW's client and therefore controls the attorney-client privilege asserted in this matter.

**1. Coverage opinion letters provided to Montpelier by CRW.** The Petitioners argue that the attorney-client privilege prevented disclosure of (1) coverage opinion letters CRW provided to Montpelier prior to the claim by the Corricks and (2) coverage opinion letters provided to Montpelier that found coverage for claims. The order of the discovery commissioner found that the attorney-client privilege did not apply to these documents because "CRW communicated its opinion coverage interpretations of the covered party's insurance policy to a non-client by a letter." As we understand the order and the issue as briefed by the parties, merely because CRW sent letters to Montpelier's insureds regarding Montpelier's position on insurance coverage for a claim, the attorney-client privilege was waived as to coverage opinion letters CRW sent to Montpelier. The Respondents summarize their argument by indicating that, "[w]here an attorney acts to investigate a claim and has direct contact with third parties as a result of the investigation, the attorney-client privilege does not apply."[16] Under the facts of this case, we disagree.

---

[16]The Respondents also have made an undeveloped statement that the attorney-client privilege was waived because Montpelier placed CRW's advice in issue. We have held that the assertion of legal advice as a defense "does not constitute a waiver of the privilege." *State ex rel. Marshall Cnty. Comm'n v. Carter*, 225 W. Va. 68, 77, 689 S.E.2d 796, 805 (2010). We have explained that legal advice by counsel only "becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication." *State ex rel. U.S. Fid. & Guar. Co. v. Canady*, 194 W. Va. 431, 442 n.16, 460 S.E.2d 677, 688 n.16 (1995) (citations omitted). The Respondents have failed to develop this issue for this Court to make a determination of whether the legal advice exception has any application in this case. The general rule of this Court is that "issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered[.]" *State v. LaRock*, 196 W. Va. 294,

(continued...)

8

It has been recognized "that an insurance company's retention of legal counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage, is a classic example of a client seeking legal advice from an attorney." *Hartford Fin. Servs. Grp., Inc. v. Lake Cnty. Park & Rec. Bd.*, 717 N.E.2d 1232, 1236 (Ind. App. 1999) (internal quotations and citation omitted). In this situation, a coverage opinion letter written by outside counsel to the insurer containing legal advice "is protected by the attorney-client privilege because it involved confidential communications." *Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App.2004).

In the instant case, the Respondents contend that, because the Petitioners disclosed the recommendation of the coverage opinion letters to the insureds, the attorney-client privilege was lost as to the actual coverage opinion letters. As a general matter, it has been recognized that "'[s]tatements made by a client to an attorney are not within the attorney-client privilege if the information is given with the intent that it be used and disseminated to third parties.'" *State ex rel. Ash v. Swope*, 232 W. Va. 231, ___, 751 S.E.2d 751, 757 (2013) (quoting Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, *Handbook on Evidence for West Virginia Lawyers*, § 501.02[7][F] (5th ed. 2012). *See*

---

[16](...continued)
302, 470 S.E.2d 613, 621 (1996).

*United States v. Martin*, 773 F.2d 579, 584 (4th Cir.1985) ("To be privileged it must be intended that information given [to] an attorney remain confidential; information given with the intent that it be used . . . is inconsistent with the confidentiality asserted.").[17] Application of the third-party disclosure exception to the attorney-client privilege, in the context of the Respondents' argument, appears to be novel. The Respondents have not cited to, nor have we found, any case in the country that has held that the attorney-client privilege does not apply to a coverage opinion letter when an insurer communicates the gist of the recommendation contained in the letter to the insured. This is not to say that the issue of disclosure of a coverage opinion letter and the attorney-client privilege has not been litigated. This issue is frequently litigated, but usually in the context of an insured seeking an attorney's coverage opinion letter because it was part of the insured's claim file.

For example, the decision in *Bertelsen v. Allstate Insurance Co.*, 796 N.W.2d 685 (S.D. 2011), involved breach of contract and first-party bad faith claims against an

---

[17]We recognize that "[s]everal courts hold that the attorney-client privilege does not apply where the attorney acted as a claims adjustor on the initial claim determination because the attorney is not acting as a lawyer in such instance." *Dakota, Minnesota & Eastern R.R. Corp. v. Acuity*, 771 N.W.2d 623, 638 (S.D. 2009). *See Woodruff v. American Family Mut. Ins. Co.*, 291 F.R.D. 239, 246 (S.D. Ind. 2013); *First Aviation Servs., Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 68-69 (D. Conn. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill.1993); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986); *Evans v. United Servs. Auto. Ass'n.*, 541 S.E.2d 782, 791 (N.C. Ct. App. 2001). In the instant case, the Respondents have not presented any evidence to show that CRW was acting as a claims adjuster.

10

insurer. The insured in the case was injured in an auto accident. The insurer denied coverage on the basis of a workers' compensation exclusion in the policy. The insured ultimately prevailed on the breach of contract claim, but the jury rejected the bad faith claim.[18] The insured appealed the adverse bad faith claim verdict. One of the issues raised on appeal by the insured was that the trial court committed error in finding the attorney-client privilege protected from disclosure a coverage opinion letter in the claim file that was written for the insurer by outside counsel. The appellate court found that the attorney-client privilege did in fact apply to the coverage opinion letter:

> Under the medical payments provision in the policy, Allstate contracted to pay medical benefits directly to the [insured], creating an adversarial first-party coverage situation. When the [insured] notified Allstate of [the] claim, Allstate retained outside counsel to obtain a professional legal opinion on what it considered a novel question of coverage. Allstate's retention of counsel was for the purpose of facilitating the rendition of professional legal services, which is a classic example of a client seeking legal advice from an attorney. The [insured] w[as] not [a] joint client[] of the counsel Allstate retained. It thus appears that the attorney-client privilege protects the coverage opinions outside counsel prepared for Allstate during the investigation of [insured's] claim.

*Bertelsen*, 796 N.W.2d at 701 (internal quotations and citations omitted).

In the case of *Aetna Casualty & Surety Co. v. Superior Court*, 153 Cal. App. 3d 467 (1984), an insurer filed a declaratory relief action against its insured to determine

---

[18]The insured's spouse was also a plaintiff in the case.

whether the policy it issued covered the destruction of the insured's home due to a mudslide. The insured filed a claim alleging bad faith in the denial of insurance coverage. The insured also served a subpoena duces tecum seeking files from the attorney who investigated the claim for the insurer to determine whether the policy covered the accident. The insurer filed a motion to quash the subpoena. The trial court denied the motion and the insurer filed a petition for an extraordinary writ with the appellate court. During the proceeding before the appellate court, the insured conceded that the attorney-client privilege attached to many of the documents in the files. However, the insured contended that the privilege did not apply because he and the insurer were joint clients of the attorney; the insurer was relying on advice of counsel as a defense; the attorney was retained by the insurer to act in the capacity of an agent other than an attorney; and the insurer's state of mind was at issue. The appellate court rejected all of the insured's arguments. Pertinent to the discussion in the instant case, the appellate court in *Aetna* held the following:

> [A]n insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and would deserve the primary purpose of the attorney-client privilege-to facilitate the uninhibited flow of information between a lawyer and client so as to lead to an accurate ascertainment and enforcement of rights.
>
> . . . .

12

> [I]n the case before us Aetna retained Thornton to investigate Pietrzak's claim and make a coverage determination under the policy. This is a classic example of a client seeking legal advice from an attorney. The attorney was given a legal document (the insurance policy) and was asked to interpret the policy and to investigate the events that resulted in damage to determine whether Aetna was legally bound to provide coverage for such damage.
>
> . . . .
>
> In the instant case it appears that the judge did not conduct an in camera examination of the written or verbal communications which Pietrzak seeks to discover. . . . In these circumstances, it was error for the judge to give Pietrzak carte blanche access to the files and testimony, as he did.

*Aetna*, 153 Cal. App. 3d at 474-76. *See State Farm Fire & Cas. Co. v. Superior Court*, 206 Cal. App. 3d 1428 (1988) (applying *Aetna*).

The decision in *Howard v. Dravet*, 813 N.E.2d 1217 (Ind. Ct. App. 2004), involved a litigant's attempt to obtain the complete investigation file involving three third-party insureds. The decision in *Howard* was an action for injuries and wrongful death. The initial three defendants in the case were all insured by the same insurer, Great West Casualty Company ("Great West"). Great West provided a defense for all three defendants. After the insurer settled the case for all three defendants, but before the case was actually dismissed, the plaintiffs amended the complaint and added a defendant, an auto repair shop owner named Paul Howard. Mr. Howard served a request for production of documents directly on Great West (a non-named party), seeking Great West's complete file on the accident. Great

13

West filed a motion to quash the request on the grounds of the attorney-client privilege and work product doctrine. The trial court granted the motion. Mr. Howard appealed the decision. One of the issues decided on appeal was whether the insurer's coverage opinion letter was protected by the attorney-client privilege. The appellate court summarily found that the privilege applied to the coverage opinion letter:

> Here, the evaluation letter, which contained legal advice to Great West from its counsel, is protected by the attorney-client privilege because it involved confidential communications.

*Howard*, 813 N.E.2d at 1222.[19]

The Petitioners in the instant case also cited to the decision in *United Services Automobile Association v. Roth*, 859 So. 2d 1270 (Fla. Dist. Ct. App. 2003), as authority for finding the attorney-client privilege applies. The decision in *Roth* is a per curiam opinion that summarily addressed the attorney-client privilege. While it is not totally clear, it appears that the insureds in *Roth* requested the insurer disclose coverage opinion letters involving other insureds. The trial court ordered the documents be disclosed. The appellate court disagreed and tersely wrote:

> We have reviewed the documents in question and find that they are protected by the attorney-client privilege. . . . That privilege covers communications on legal matters between

---

[19]The opinion went on to hold that the privilege attached to the coverage opinion letter did not extend to other documents in the claim file.

> counsel and client. Any communication to which the privilege attaches is absolutely immune from disclosure. The trial court deviated from the essential requirements of the law when it ordered USAA to produce these documents.

*Roth*, 859 So. 2d at 1271. *See Arch Coal, Inc. v. Federal Ins. Co.*, No. 4:05CV00712 ERW, 2006 WL 1391317, at*1 (E.D. Mo. May 22, 2006) ("The coverage opinion contains a thorough legal analysis of the case. The coverage opinion constitutes a communication between an attorney and his client and is protected by the attorney-client privilege.").

The insurers in *Bertelsen*, *Aetna*, and *Howard* informed the insureds of the recommendation contained in the actual coverage opinion letters submitted by outside counsel. Even so, the decision in *Bertelsen*, *Aetna*, and *Howard* found that the coverage opinion letters were protected by the attorney-client privilege. Moreover, the opinion in *Roth* appears to be on all-fours with the instant case, with respect to imposing the attorney-client privilege on coverage opinion letters written for claims not involved in that litigation. We find the analysis in the above-authorities is applicable to the request for coverage opinion letters in this case. Consequently, we find the attorney-client-privilege protected the coverage opinion letters from disclosure.[20] In rendering this finding, we reject the

---

[20]We should point out that in reviewing the documents placed under seal with this Court, we found six drafts of letters written by CRW that were addressed to policyholders, but submitted to Montpelier for its approval. We are not certain which discovery request called for the production of these draft letters. Nothing in the record submitted to this Court demonstrates that these draft letters were in fact sent out as proposed

(continued...)

Respondents' reliance on *State ex rel. United Hospital Center, Inc. v. Bedell*, 199 W. Va. 316, 484 S.E.2d 199 (1997).

The decision in *Bedell* was a medical malpractice action. The plaintiff in the case fell when a hospital nurse was attempting to help her get out of bed. After the accident, the hospital's general counsel/risk manager investigated the incident and thereafter completed a "General Counsel/Risk Manager's Investigation Form," which consisted of four pages of notes and a statement by the nurse who attended the plaintiff. During discovery in the case, the plaintiff requested, among other things, disclosure of the investigation report prepared by the hospital's general counsel/risk manager.[21] The circuit court ordered disclosure of the report. The hospital filed a petition for a writ of prohibition with this Court seeking to prevent disclosure of the report.[22] The hospital contended that the report was

---

[20](...continued)
by CRW. Without any evidence showing the actual dissemination of any of the letters to insureds, the draft letters retained their status as legal advice to Montpelier and, as such, were protected from disclosure by the attorney-client privilege. *See Yamagata Enters., Inc. v. Gulf Ins. Co.*, No. 2:07-CV-00644-HDM-GWF, 2008 WL 942567, at *1 (D. Nev. April 7, 2008) ("Having considered this matter and heard oral argument of counsel, the Court finds that Plaintiff has not demonstrated sufficient grounds to overcome the attorney-client privilege or the work-product doctrine regarding Defendant's confidential communications with its outside counsel relating to the issue of policy coverage or to obtain production of counsel's draft letters.").

[21]The plaintiff died during the course of the litigation.

[22]The hospital also sought to prevent disclosure of other matters that are not relevant to this case.

16

protected from disclosure by the attorney-client privilege and work product doctrine. With respect to the attorney-client privilege claim, this Court disposed of the issue in three sentences. The opinion held that

> the hospital has failed to articulate a clear argument as to how the elements of the attorney-client privilege have been met with regard to the investigation report. As a result, the hospital has failed to carry its burden of establishing the attorney-client privilege, in all its elements, with regard to . . . the . . . investigation report.

*Bedell*, 199 W. Va. at 326, 484 S.E.2d at 209 (footnote and citation omitted). Next, the opinion pointed out in a footnote that "the hospital's arguments with regard to the investigation report largely consisted of protection of this document under the work product doctrine." *Bedell*, 199 W. Va. at 326 n.12, 484 S.E.2d at 209 n.12.

The summary resolution of the attorney-client privilege issue in *Bedell* has no application to the instant case. The attorney in *Bedell* simply filled out a fact-based accident report. There was no evidence that the hospital asked the attorney to render a legal opinion on anything in the report. Conversely, the documents at issue in the instant case involve legal opinions requested by Montpelier from outside counsel. Obviously, in rendering those legal opinions, CRW had to examine the facts unique to each case. However, the critical work of CRW was a determination of whether the policy language, judicial decisions, and other applicable laws obligated Montpelier to recognize the claims filed. There was no evidence

17

of this type of legal work being performed by the attorney in *Bedell*. Therefore *Bedell* does not alter our determination that the attorney-client privilege prevented disclosure of the coverage opinion letters in this case.[23]

**2. Seminar and training materials.** The circuit court ordered CRW to disclose all seminar or training materials it prepared for *any* insurer or industry group involving coverage interpretation or extra-contractual liability. The Petitioners argue that these documents were prepared for nonparties and are protected by the attorney-client

---

[23]The discovery commissioner also found, and the Respondents argue, that because CRW was named as a defendant, the attorney-client privilege was waived as to the coverage opinion letters. We summarily reject this contention. The Respondents have not cited to any authority, nor have we found any, that supports the discovery commissioner's finding. This Court has previously recognized that an attorney for an insurance company can, in fact, assert the attorney-client privilege when being deposed in a bad faith case. *See* Syl. pt. 11, *State of West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W. Va. 705, 601 S.E.2d 25 (2004) ("In an action for bad faith against an insurer, the general procedure to be followed to depose attorneys employed by the insurer is as follows: (1) The party desiring to take the deposition(s) must do so in accordance with the mandates of Rule 30 of the West Virginia Rules of Civil Procedure; (2) If the responding party asserts a privilege to any of the questions posed, the responding party must object to such questioning in accordance with the directives of Rule 30(d)(1); and (3) If the party seeking testimony for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery."). The discovery commissioner stated in his recommendation that this Court would not apply the *Madden* limitations because CRW is a party. We fail to see a reason to restrict *Madden*. Whether the attorney is a joint defendant or nonparty deponent is irrelevant to the client's right to prevent disclosure of attorney-client communication. The privilege is not that of CRW. The privilege belongs to the client, Montpelier. *See State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 372 n.21, 508 S.E.2d 75, 89 n.21 (1998) ("The attorney-client privilege belongs to the client.").

18

privilege. The recommended decision of the discovery commissioner does not contain any specific analysis on this issue. The Respondents have argued simply that the training materials are discoverable because they "would apply directly to the process and mode by which . . . claims are handled and considered by the Petitioners."

Our research has revealed that at least one court has addressed the issue of the discovery of insurance company training materials and the attorney-client privilege.[24] In *Santer v. Teachers Insurance and Annuity Association,* No. 06-CV-1863, 2008 WL 821060 (E.D. Pa. Mar. 25, 2008), a federal district court issued a memorandum order on the plaintiff's request to discover materials related to training that defendant insurer provided to its employees which concerned bad faith insurance practices, insurance litigation in general, and privacy rights. The defendant objected to production on the grounds that the materials were subject to the attorney-client privilege. The district court agreed as follows:

---

[24]We will note that this issue is usually litigated in the context of trade secrets. Several courts have concluded that insurers' training manuals contain trade secrets and have therefore granted protective orders for them. *See Buzoiu v. Risk Mgmt. Alts., Inc*., 2004 WL 870700 (E.D. Pa. Apr. 5, 2004); *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420 (S.D. Ind. 2001); *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685 (S.D. 2011). But other courts have denied insurers' motions for protective orders of their training manuals because they did not present sufficient evidence to establish that the manuals contained trade secrets. *See Adams v. Allstate Ins. Co.*, 189 F.R.D. 331 (E.D. Pa. 1999); *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 204 P.3d 944 (Wash. Ct. App. 2009); *Woo v. Fireman's Fund Ins. Co.*, 154 P.3d 236 (Wash. Ct. App. 2007);. In the instant proceeding, the Petitioners have not raised a trade secrets objection.

19

After careful and meticulous in camera review of the materials plaintiff seeks, the Court finds that the documents are privileged. Standard's in-house attorneys prepared the materials for the purpose of answering their clients' questions concerning how statutes and court decisions in the areas of bad faith, insurance litigation, and privacy affect the way Standard handles claims. Standard's attorneys then presented these materials to Standard claims representatives during training sessions in a question and answer format. The contents of the materials, generally speaking, include explanations of basic legal concepts and direction concerning where claims representatives fit into the legal process when Standard is sued. The materials are thus communications from an attorney to a client that reflect communications from the client to the attorney for the purpose of securing an opinion of law.

*Santer*, 2008 WL 821060, at *1.

The decision in *Santer* is instructive on the resolution of the seminar/training materials sought in this case. We have reviewed all of the documents submitted under this discovery request. All of the documents reflect CRW's legal opinion on specific topics. The documents explain legal concepts and procedures and specific policy issues. As recognized in *Santer*, these documents clearly demonstrate specific requests by CRW's clients for legal opinions on specific subjects. Further, as in *Santer*, we find these documents are protected by the attorney-client privilege.

### B. Application of Work Product Doctrine

20

The circuit court ordered CRW to disclose its contract with Montpelier and its billing statements for the work performed on the coverage opinion letter for the claim filed by Respondents. The Petitioners contend that this material was protected from disclosure by the work product doctrine.[25]

The work product doctrine is embodied in Rule 26(b)(3) of the West Virginia Rules of Civil Procedure.[26] We have held that the "work product protection under the provisions of Rule 26 extends only to documents prepared in anticipation of litigation." *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 220 W. Va. 525, 534, 648 S.E.2d 31, 40

---

[25]The Petitioners also have also argued that the work product doctrine prevents disclosure of the coverage opinion letters and training documents. Insofar as we have determined that the attorney-client privilege protects those documents from disclosure, we need not address those matters under the work product doctrine.

[26]Rule 26(b)(3) provides as follows:

(b) Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

21

(2007). We have recognized that "documents prepared in the regular course of the compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation are not protected from discovery as work product." *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W. Va. 316, 328, 484 S.E.2d 199, 211 (1997) (internal quotations and citation omitted). This Court also has held that, "[t]o determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." Syl. pt. 7, *Bedell, id.* The "authority to invoke the protection of the work product doctrine generally rests exclusively with attorneys[.]" *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 220 W. Va. 525, 532, 648 S.E.2d 31, 38 (2007). It has been held that "Rule 26(b)(3) of the West Virginia Rules of Civil Procedure makes a distinction between factual and opinion work product with regard to the level of necessity that has to be shown to obtain their discovery." Syl. pt. 7, *In re Markle*, 174 W. Va. 550, 328 S.E.2d 157 (1984). This distinction has been described as follows:

> Under Rule 26(b)(3), factual work product refers to documents and tangible things that were prepared in anticipation of litigation or for trial (1) by or for a party, or (2) by or for that party's representative, which includes an attorney, consultant, surety, indemnitor, insurer, or agent. When factual work product is involved, the party demanding production must show a substantial need for the material and establish that the same material or its equivalent cannot be obtained through other means without undue hardship. Opinion work product consists of mental impressions, conclusions, opinions or legal theories

22

that are contained in factual work product. Where opinion work product is involved, the showing required to obtain discovery is stronger than that for factual work product, because the rule states that the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories. Opinion work product enjoys a nearly absolute immunity and can be discovered in only very rare and extraordinary circumstances.

*State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 218 W. Va. 593, 599, 625 S.E.2d 355, 361 (2005) (Davis, J., concurring). It has been noted that "the burden of establishing the work product exception always rests upon the person asserting it." Cleckley, Davis, & Palmer, *Litigation Handbook* § 26(b)(3), at 721.

The issue of whether retention agreements and billing statements are protected from disclosure under the work product doctrine is one of first impression for this Court. However, the issue has been addressed in other jurisdictions:

Generally speaking, attorney's retainer agreements are not privileged. . . . Additionally, information relating billing, contingency fee contracts, fee-splitting arrangements, hourly rates, hours spent by attorneys working on the litigation, and payment attorney's fees does not fall within either the attorney-client or the work product privilege.

*Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at*11 (E.D. La. Apr. 2, 2004). *See Martin v. Martin*, No. 2011-T-0034, 2012 WL 5195816, at*9 (Ohio App. 2012) (Grendell, J., dissenting) ("With respect to . . . the fee agreement and billing statements, it has been held that documents such as time sheets and billing records can generally be categorized as routine office records that fall outside the definition of trial

23

preparation records, and, consequently, are not covered by attorney-client privilege or work product."). It has been observed "that the motivating force behind the preparation of attorney invoices is to secure payment, and therefore, attorney billing records are not likely to contain disclosures of confidential information or mental impressions, conclusions, or opinions in the nature of work product." *Schenck v. Township of Center, Butler Cnty.*, 975 A.2d 591, 595 (Pa. 2009) (Saylor, J., dissenting). *See Anderson Columbia v. Brown*, 902 So. 2d 838, 841-42 (Fla. Dist. Ct. App. 2005) ("The hours expended and rate charged by defense counsel is not information protected by either the attorney-client or work product privilege."); *Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 507 (Kan. Ct. App. 2011) ("Likewise, the work-product doctrine . . . does not offer a per se exemption for attorney billing statements. Certainly, if the billing statement narrative reflected litigation strategy or specified the nature of the services provided, such as research to a particular area of law, it may be privileged.").

Under certain circumstances, retention agreements and "details in billing statements may reveal confidential communications between client and attorney or the attorney's mental impressions or legal theories, that is, his work product, which is protected and generally not open to discovery." *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1114 (Mass. 2007). *See Shell v. Drew & Ward Co.*, 897 N.E.2d 201, 206 (Ohio Ct. App. 2008) ("Having determined that both the fee agreements and the billing

24

records in this case contain privileged information, we determine that the trial court erred in concluding otherwise and in ordering their disclosure."). The court in *Shell* found billing statements protected from disclosure because "[t]hey contain[ed] the names of persons to whom [the attorney] spoke about the . . . litigation and the types of documents [he] reviewed in preparation for the . . . litigation, as well as different areas of law that [he] had researched in preparation for the litigation." *Shell*, 897 N.E.2d at 206. *See Hewes v. Langston*, 853 So. 2d 1237, 1249 (Miss. 2003) ("We conclude that the billing statements and DayTimer entries are the type of detailed statements that are protected by the work product doctrine, and the trial court erred in ordering them produced."). However, it has been said that "[t]o the extent [retention agreements and] billing records may contain 'ordinary work product' or 'opinion work product,' [they] are . . . subject to redaction of such information." *Tacke v. Energy West, Inc.*, 227 P.3d 601, 610 (Mont. 2010). *See Sokol Holdings, Inc. v. Dorsey & Whitney*, *LLP*, 2009 WL 2501542, No. C.A. No. 3874-VCS, at\*8 (Del. Ch. Aug. 5, 2009) ("[A]lthough attorney timesheets and invoices may be redacted to the extent they reveal the strategic thought processes of counsel, the basic information of those documents-hours and billing-remains discoverable." (footnote added)); *McCarthy v. Slade Assocs., Inc.*, 972 N.E.2d 1037, 1050 (Mass. 2012) ("To the extent that a particular description of services in one or more of the bills might contain substantive references to privileged attorney-client communications, these entries may be redacted by the motion judge.").

In the instant proceeding, the Petitioners argue generally that the retention agreement and billing statements were protected by the work product doctrine.[27] The Petitioners' brief did not make any specific work product argument regarding the retention agreement.[28] With respect to the billing statements, the Petitioners argued that those documents reveal the mental impression of counsel, because they "reveal exactly what was done, how long it took and precisely the issues researched, and how long such research and writing took."[29] We disagree.

We have reviewed both the retention agreement between CRW and Montpelier, and the two billing statements tendered by CRW. The retention agreement is a general agreement that states how legal work would be assigned to CRW, how conflict of interests would be resolved, how billing would occur, CRW's obligation to obtain professional liability insurance, how disputes between the parties would be resolved, and a few other miscellaneous matters. Nothing contained in the retention agreement would make either prong of the work product doctrine applicable. *See Gold Standard, Inc. v. American Barrick Res. Corp.* 801 P.2d 909, 911 (Utah1990) ("[T]he primary purpose behind creating the June

---

[27]The Petitioners allege that the discovery commissioner reviewed the discovery requests only under the factual work product prong.

[28]The bulk of Petitioners' focus under the work product analysis was on the coverage opinion letters–which we disposed of under the attorney-client privilege.

[29]It will be noted that the discovery commissioner recommended redacting the amount actually charged for each task performed.

letter was not 'to assist in pending or impending litigation.' There is no indication that the letter or ideas generated by the letter were intended for use in litigation. . . . It outlines a retainer agreement and sets up a plan for allocating costs and burdens. . . . The letter does not contain any legal strategies, theories, or conclusions[.]"). With respect to the two billing statements, those documents are typical non-protected billing statements that provide very general descriptions of the work performed, the initials of the attorney performing the work, and the time it took to perform each task (as indicated, the actual amount charged was ordered redacted). *See McCarthy v. Slade Assocs., Inc*., 972 N.E.2d 1037, 1050-51 (Mass. 2012) ("[A]s a general proposition, billing records are just that-records of amounts being billed to a particular client for services rendered and, presumably, a description of those services, the identity of those who rendered them and the time they each spent in doing so, and actual costs incurred. This is usually the stuff of fact, not opinion. To the extent that a particular description of services in one or more of the bills might contain substantive references to privileged attorney-client communications, these entries may be redacted by the motion judge."). Therefore, we find that the circuit court was correct in adopting the discovery commissioner's recommendation that the work product doctrine did not prevent disclosure of the retention agreement and billing statements.

27

## C. Relevancy

The Petitioners argue that if this Court finds the retention agreement and billing statements are not protected by the work product doctrine, those documents are still not discoverable because they were not relevant to any issue in the case and would not lead to the discovery of any relevant evidence.[30]  It is provided under Rule 26(b)(1) that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"  This Court addressed the contours of relevancy under Rule 26(b)(1) in Syllabus point 4 of *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992), as follows:

> The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried.  However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence.

It also has been observed that "[t]he party seeking to prevent discovery has the burden of showing the requested information is not relevant."  Cleckley, Davis, & Palmer, *Litigation Handbook* § 26(b)(1), at 690.

---

[30]The Petitioners also make this argument with respect to the coverage opinion letters and training documents, which we have determined are protected from disclosure by the attorney-client privilege.

The discovery commissioner's order states summarily that "the documents identified on the privilege log are relevant . . . pursuant to [Rule] 26 based upon the Plaintiffs['] complaint and theory of the case against CRW." We have reviewed the amended complaint filed with the record in this case and agree with the discovery commissioner that the retention agreement and billing statements may be relevant to at least one of the claims against the Petitioners. The amended complaint alleges that the Petitioners entered into a civil conspiracy whereby CRW would "provide Montpelier 'paid for hire' coverage denial opinions that were not based on a proper investigation of the facts . . . and designed solely for the purpose of giving Montpelier a defense to any bad faith or unfair trade practices claim and to deny proper claims." Although we make no ruling on the veracity or viability of these allegations, they do make the retention agreement and billing statements relevant. *See Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-64 TS, 2010 WL 3258198, at*1 (D. Utah Aug. 17,2010) ("Because the testing using the detector in the Qui Tam cases may be marginally relevant to Dr. Adams' testimony in the present case or to the issue of damages, such information is discoverable under Rule 26(b)(1)."). Consequently, we must reject the Petitioners' contention that the retention agreement and billing statements are not relevant.

## IV.

## CONCLUSION

The requested writ of prohibition is granted as moulded. That part of the circuit court's order which permits discovery of documents sought through Respondents' Request for Production Nos. 11, 20, and 22 is prohibited from enforcement. The documents tendered under those requests are prohibited from disclosure under the attorney-client privilege. That part of the circuit court's order which permits discovery of documents sought under Respondents' Request for Production No. 10 is not prohibited from enforcement.

Writ granted as moulded.