[Cite as *Total Quality Logistics, L.L.C. v. BBI Logistics, L.L.C.*, 2022-Ohio-1440.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

TOTAL QUALITY LOGISTICS, LLC,    :

    Appellee,    :    CASE NO. CA2021-04-012

    :    O P I N I O N
  - vs -    5/2/2022

    :

BBI LOGISTICS LLC, et al.,    :

    Appellants.    :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019CVH00699

Dinsmore & Shohl LLP, and Eric K. Combs and Matthew J. Wiles, for appellee.

Brennan, Manna & Diamond LLC, and David M. Scott and Krista D. Warren, for appellants.

**HENDRICKSON, J.**

{¶1} Appellants, BBI Logistics, LLC, and Benjamin Humphries, appeal a judgment of the Clermont County Court of Common Pleas granting the motion to compel discovery filed by appellee, Total Quality Logistics, LLC (TQL). Appellants contend that the trial court's discovery order requires them to disclose privileged and confidential information. They argue that the trial court erred by not conducting an in camera review of the information before ordering disclosure. For the reasons discussed below, we conclude that

the trial court did not abuse its discretion by ordering appellants to disclose the information without conducting an in camera review. We accordingly affirm the trial court's order.

## I. Factual and Procedural Background

{¶2} On May 30, 2019, TQL filed an action against BBI and Humphries for a temporary restraining order, preliminary injunction, and permanent injunction. The complaint also included claims for breach of contract and misappropriation of trade secrets against Humphries and tortious interference with contract and tortious interference with business relations against BBI. TQL alleged that Humphries breached a noncompete agreement that precluded him from working for a competitor or soliciting his former customers for two years by going to work for BBI, one of TQL's direct competitors.

### A. *Discovery*

{¶3} The parties agreed to an expedited discovery schedule, and on June 10, 2019, TQL served a first set of interrogatories and requests for production of documents on BBI and Humphries. They included:

> BBI Interrogatory No. 2: "Please identify all persons who are owners, members, or interest holders of BBI and provide the date upon which each person acquired their ownership or membership interest."
>
> BBI Request for Production No. 6: "Please produce all documents that record, reflect, or relate to any and all communications directed to or coming from Humphries since June 1, 2017, including without limitation all text messages, emails, letters, and/or phone records."
>
> Humphries Request for Production No. 4: "Please produce all documents that record, reflect, or relate to communications between You and Brent Bosse, or anyone else from BBI, since June 1, 2017, including without limitation all text messages, LinkedIn messages, Facebook messages, emails, letters, and/or phone records."

{¶4} On June 14, 2019, TQL received appellants' responses which included one email and seven screenshots showing exchanges of text messages, only three of which

were unredacted.  A few days later, TQL's counsel spoke with appellants' counsel about the limited production as well as the fact that most of the text messages were redacted.  On June 26, appellants produced their first privilege log and stated that "[w]ith regard to the first discovery issue (lack of redacted communications), we have confirmed with our clients, and there are no other responsive documents or information in their possession."  The privilege log lists seven text messages and for each states the "Item No.," "Sender," "Recipient," and "Description."  The sender for each message is Humphries and the recipient is Brent Bosse, who left TQL several years ago to start BBI.  The description for each message is the same, the claimed privileges, "Attorney-Client Privilege and/or Work-Product" and "Protected by Joint Defense/Common Interest Doctrine."

{¶5}   On July 5, 2019, appellants produced a second privilege log listing 73 text messages exchanged between Humphries and Bosse.  In addition to the information stated in the first privilege log, the second privilege log also states a "Description of Item," each of which is described as "SMS Text," and the "Number of Characters" in each message.  The "Description" column from the first log is changed to "Description of Privilege," and the description for each text message remains substantively the same, "Attorney-Client Privilege and/or Work-Product" and "Joint Defense/Common Interest Doctrine."

{¶6}   On July 11, 2019, TQL asked appellants for a revised privilege log that included, among other things, the dates for each of the redacted communications so that TQL could evaluate appellants' privilege claims.  On July 17, TQL again asked appellants for a revised privilege log listing the dates and describing the nature of the redacted information.  On July 26, TQL yet again asked appellants for a revised privilege log, and later that day, appellants produced their third privilege log.  Added to the third log is the date and time for each text message.

{¶7}   Upon review, TQL believed that appellants had listed new text messages and

that the third privilege log was inaccurate. It also appeared to TQL that there were significantly more text messages stored on Bosse's phone that had not been produced or included in any of appellants' privilege logs. The next day, TQL notified appellants of the discrepancies and asked them to explain. TQL also demanded that all communications responsive to its discovery requests be produced. Appellants responded the next day, July 30, 2019, with an explanation that did not satisfy TQL as well as a fourth privilege log. The fourth privilege log lists only 69 text messages and changes the "Description of Privilege" for seven messages to "Confidential and Proprietary."

{¶8} On September 25, 2019, appellants served formal responses to TQL's discovery requests. To the interrogatory asking BBI to identify all owners, members, or interest holders of BBI (BBI Interrogatory No. 2), BBI responded: "Objection. This request seeks information that is nether relevant nor reasonably calculated to lead to discoverable information." Appellants also objected to certain requests for documents, stating that they "call for BBI to provide TQL with its confidential and proprietary information." Appellants objected to the requests for text messages, stating: "Request is overbroad, unduly burdensome, harassing, and seeks information that is not relevant nor reasonably calculated to lead to discoverable information. Subject to and not withstanding said objection, the responding party states as follows: Please see documents previously produced."

## B. *Motion to compel*

{¶9} On October 15, 2019, TQL moved to compel appellants to disclose the identity of all BBI's owners and to produce the text messages. After a long delay caused by the Covid-19 pandemic, the trial court held a hearing on the motion in December 2020. At the hearing, the court told appellants that their privilege log was inadequate. The court noted that a possible solution was for appellants to submit the text message under seal for in

camera review but indicated that it did not think that this was necessary. Appellants told the court that they could add a statement or summary of each message to the privilege log, which, they said, "would detail some more facts ideally to allow the Court to do that and to avoid the Court having to devote its time to an in-camera inspection." (Tr. 20). TQL argued that BBI had long failed to satisfy its duty under Civ.R. 26 and that it should not have another opportunity to attempt compliance.

{¶10} Appellants failed to supplement their privilege log, and three months after the hearing, on March 17, 2021, the trial court granted TQL's motion to compel. The court found that appellants had failed to comply with Civ.R. 26(B)(8), having made only "boilerplate assertions" of privilege and failing to provide any supporting evidence. The court further found, based on the multiple, "woefully deficient" privilege logs, that appellants failure to comply "was intentional and not based upon a reasonable interpretation of the rule." Consequently, the court found that appellants had waived their right to assert privilege. The court ordered them to produce the complete and unredacted text messages listed in the privilege logs and any other responsive message not identified in the logs. The court also ordered BBI to identify all its owners.

{¶11} BBI and Humphries appealed the trial court's discovery order.

**II. Analysis**

{¶12} Appellants assign two errors to the court, which we will review together.

{¶13} Assignment of Error No. 1:

{¶14} THE TRIAL COURT ERRED IN ORDERING BBI TO DISCLOSE ATTORNEY CLIENT PRIVILEGED INFORMATION WITHOUT FIRST CONDUCTING AN *IN CAMERA* REVIEW AND/OR EVIDENTIARY HEARING.

{¶15} Assignment of Error No. 2:

{¶16} THE TRIAL COURT ERRED IN ORDERING BBI TO DISCLOSE

- 5 -

CONFIDENTIAL AND PROPRIETARY BUSINESS INFORMATION WITHOUT FIRST CONDUCTING AN *IN CAMERA* REVIEW AND/OR EVIDENTIARY HEARING.

{¶17} The trial court compelled disclosure of text messages appellants claim are protected by the attorney-client privilege and the common-interest and joint-client doctrines. Appellants contend that their privilege log establishes the privileged nature of the communications and that if they had provided a more detailed description as to the content of the messages, they would have risked revealing the protected information. The trial court also compelled disclosure of BBI's owners, and appellants claim that this information is confidential. Appellants argue that the trial court abused its discretion by not reviewing the text messages and ownership information in camera to determine the extent to which it is protected from disclosure.

A. *The standard of review*

{¶18} Appellants contend that the applicable standard of review is de novo. Generally, "whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. However, the trial court here did not make any privilege determinations. Rather, the issues in this appeal concern only the regulation of discovery. An abuse-of-discretion standard applies when reviewing a trial court's disposition of discovery issues. *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). This includes a ruling on a motion to compel, *id.*, and "the particular sanction to be imposed for a discovery infraction," *Gill v. Gill*, 8th Dist. Cuyahoga No. 81463, 2003-Ohio-180, ¶ 26, citing *Nakoff v. Fairview General Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. An abuse of discretion connotes a decision that is "unreasonable, unconscionable, or arbitrary." *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

B. *The attorney-client privilege*

**{¶19}** "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081 (1998). It "exempts from the discovery process certain communications between attorneys and their clients." *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, ¶ 7 (6th Dist.). The joint-client and common-interest doctrines operate as exceptions to the general rule that voluntary disclosure of communications made with one's attorney to a third party waives the attorney-client privilege. *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. Franklin Nos. 12AP-564 and 12AP-586, 2012-Ohio-4668, ¶ 26; *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D.Ohio 2010). The joint-client doctrine "'applies when multiple clients hire the same counsel to represent them on a matter of common interest,'" and the common-interest doctrine "applies 'when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities.'" *Id.*, quoting *In re Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 359 (3d Cir.2007).

C. *Discovery of privileged and confidential information*

**{¶20}** By rule, a party may generally obtain discovery as to any relevant and "nonprivileged matter." Civ.R. 26(B)(1). When it comes to privileged matter, Civ.R. 26(B)(8)(a) pertinently provides that "[w]hen information subject to discovery is withheld on a claim that it is privileged," the claim must "be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."[1] Civ.R. 26(C) provides that, upon motion, a court may issue any protective order that justice requires to protect a party from annoyance,

---

1. Before July 1, 2020, this provision was found in Civ.R. 26(B)(6).

- 7 -

embarrassment, oppression, or undue burden or expense, including one that limits the scope of discovery or that orders submission of the material under seal or that protects confidential "commercial information." The burden of showing that information "sought to be excluded under the doctrine of privileged attorney-client communications rests upon the parties seeking to exclude it." *Lemley v. Kaiser*, 6 Ohio St.3d 258, 263-264 (1983).

{¶21} "Civ.R. 37 provides a mechanism by which discovery rules can be enforced and specifically authorizes a trial court to make 'just' orders in response to discovery violations." *Gill*, 2003-Ohio-180 at ¶ 26. "Civ.R. 37(A) authorizes and governs motions to compel discovery; Civ.R. 37(B) authorizes sanctions against a party who fails to obey an order to provide or permit discovery." *Id.*

### D. *Claims of privilege*

{¶22} A privilege log may be used to establish a claim that otherwise discoverable information is protected by a privilege. *Cousino v. Mercy St. Vincent Med. Ctr.*, 6th Dist. Lucas No. L-17-1218, 2018-Ohio-1550, ¶ 47 (holding that "a privilege log is a discovery tool that may be used to establish a claim of privilege" under Civ.R. 26); *Hartzell v. Breneman*, 7th Dist. Mahoning No. 10 MA 67, 2011-Ohio-2472, ¶ 19 (finding that Civ.R. 26 "essentially requires the construction of a privilege log"). The privilege log must contain "enough information regarding the withheld documents and the underlying attorney-client communications 'to enable the demanding party to contest the claim[.]'" *Id.*, quoting *Cargotec*, 2003-Ohio-7257 at ¶ 13. Merely stating a "broad and generalized claim of attorney-client privilege" for all responsive communications that are allegedly privileged is insufficient. *Id.* at ¶ 44. In essence, there must be some factual basis to support the privilege claim, such as "stat[ing] that communications were made between attorney and client for the purpose of procuring legal advice or representation." *Cargotec* at ¶ 13.

{¶23} "[A] claim of privilege can be waived where no privilege log is submitted."

*Hartzell* at ¶ 23; *see also Huntington Natl. Bank v. Dixon*, 8th Dist. Cuyahoga No. 93604, 2010-Ohio-4668, ¶ 24 (noting that the """[f]ailure to assert the privilege objection correctly can mean that the privilege is waived"""); *McPherson v. Goodyear Tire & Rubber Co.*, 146 Ohio App.3d 441, 444 (9th Dist.2001) (concluding that appellant waived the right to assert the attorney-client privilege "because appellant did not satisfy its burden of showing the privileged nature of these documents and material in a timely fashion"). A trial court has discretion to determine waiver on a case-by-case basis. *Dixon* at ¶ 22-25.

{¶24} TQL has long maintained that the information about the text messages in the privilege log is not sufficient to enable it to contest appellants' privilege claim. The trial court agreed and advised appellants of this at the hearing on TQL's motion to compel. Yet appellants failed to do anything to address the matter. The trial court found that they had intentionally failed to satisfy their Civ.R. 26(B) burden and so waived their right to assert attorney-client privilege.

{¶25} Our review of appellants' privilege log reveals that it lists each text message withheld and for each states the sender, recipient, number of characters, and date and time sent. The log does not give any indication what the text messages are about and does not state that they were made for the purpose of discussing legal advice or representation or contained discussion of legal matters. We agree with the trial court's determination that this is insufficient to allow TQL to contest the privilege claims.

{¶26} Appellants intentionally failed to comply with Civ.R. 26(B), and the court's waiver finding was, in essence, a sanction against appellants for their discovery violation. *See* Civ.R. 37(B). Appellants were repeatedly told, from the beginning, that more information was needed, but they failed to do anything about it. Over a year elapsed from the time TQL filed its motion to compel until the date the trial court granted the motion. In all that time, appellants did not move for a protective order, did not submit the text messages

to the trial court under seal, and did not request an in camera review. Nor did appellants try to supplement the information in the privilege log, despite having many months to do so.

E. *In camera review*

**{¶27}** Appellants do not spend much time arguing the sufficiency of their privilege log. In fact, they merely state that it "clearly established the nature of the communications and identified that they were protected by attorney-client privilege." They also do not challenge the trial court's finding that they waived the right to assert a claim of privilege. What appellants argue instead is that the trial court should have conducted an in camera review before ordering disclosure.

**{¶28}** We have said that "[w]hether to hold an *in camera* hearing on evidentiary issues is left to the trial court's discretion[.]" *State v. Hoop*, 134 Ohio App.3d 627, 639 (12th Dist.1999), citing *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619 (1989); *see also Marcum v. Miami Valley Hosp.*, 2d Dist. Montgomery No. 26318, 2015-Ohio-1582, ¶ 20 (noting that an in camera review "is not always required, and the trial court does have discretion to consider and order alternative options"). While conducting an in camera review of allegedly privileged material is a good idea, "[a] party is not entitled, as a matter of right, to an *in camera* hearing when privilege is asserted." *Id.* Rather, "[b]efore engaging in an *in camera* review to determine whether privilege is applicable, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence establishing an applicable privilege or that the privilege is outweighed by other rights." *Id.*, quoting *Zolin* at 572. *See also Hartzell*, 2011-Ohio-2472 at ¶ 23 (holding that "the burden is on the party claiming privilege so that an in-camera hearing is unnecessary if that party fails to show a factual basis for believing in good faith that the records are not properly discoverable"); *Pinnix v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga Nos. 97998, and 97999, 2012-Ohio-3263, ¶ 11

(finding that "a trial court does not need to conduct an in camera review in every instance that a privilege is asserted" and that "an in camera inspection is not necessary when there is no 'factual basis' justifying the trial court's in camera review").

{¶29} The trial court found that appellants failed to establish a factual basis for their privilege claims. The privilege logs were insufficient, and appellants did not submit any additional evidence. As such, the trial court reasonably determined that an in camera review was unnecessary.

{¶30} Perhaps more importantly, though, appellants waived in camera review by not requesting it. *See In re Estate of Haller*, 116 Ohio App.3d 866, 871-872 (10th Dist.1996) (in camera review waived because not requested); *Gill*, 2003-Ohio-180 at ¶ 32 (holding the same). Appellants argue against waiver, citing caselaw saying that not requesting in camera review does not necessarily result in waiver. The cases that appellants rely on are distinguishable on their facts. While we agree that not requesting in camera review does not waive it necessarily, we see no good reason in this case why the trial court was required to conduct such a review sua sponte. In the ample time they had, appellants, as the parties seeking to protect the information as privileged, could have and should have filed a motion requesting that the court conduct an in camera review. Accordingly, under the circumstances presented in this case, we conclude that the trial court did not abuse its discretion by not sua sponte conducting an in camera review of the alleged privileged materials.

### F. *The allegedly confidential information*

{¶31} Lastly, the trial court also ordered disclosure of BBI's ownership information, which appellants claim is confidential. BBI did not seek a protective order under Civ.R. 26(C) or seek in camera review of this information. We conclude that it was not an abuse of discretion for the trial court to order disclosure when BBI failed to take the proper steps

to protect the information.

### III. Conclusion

{¶32} The trial court did not determine that the information in the text messages is not privileged or that BBI's ownership information is not confidential, and we offer no opinion on either issue. We hold only that the trial court did not abuse its discretion by ordering disclosure of the text messages and ownership information without first conducting an in camera review. The two assignments of error presented are overruled, and the trial court's judgment is affirmed.

{¶33} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.