[Cite as *Fiani v. Worldpay, L.L.C.*, 2024-Ohio-304.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RAMEZ M. FIANI, | : | APPEAL NO. C-230175 |
| | | TRIAL NO. A-1902178 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| WORLDPAY, LLC, | : | |
| and | : | |
| WORLDPAY, INC., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: January 31, 2024

*Freking Myers & Reul LLC, Randolph H. Freking* and *Jon B. Allison*, for Plaintiff-Appellant,

*Jackson Lewis P.C., Emily J. Gelhaus* and *David A. Nenni,* for Defendants-Appellees.

**CROUSE, Judge.**

{¶1} Plaintiff-appellant Ramez Fiani filed a complaint against his former employers, defendants-appellees Worldpay, LLC, and Worldpay, Inc., (collectively referred to as "Worldpay") asserting claims for national-origin discrimination, race discrimination, age discrimination, and retaliation. A jury returned verdicts in favor of Worldpay on all counts. Fiani now appeals, arguing in two assignments of error that the trial court abused its discretion in denying his motion for leave to amend his complaint and that the trial court erred in overruling his objection to Worldpay's untimely and selective waiver of the attorney-client privilege. Finding Fiani's arguments to be without merit, we affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶2} In 2010, Fiani was hired by Fifth Third Processing Solutions ("FTPS"), a predecessor company of Worldpay, as a senior vice president of procurement. Fiani signed an offer of employment from FTPS. This document stated:

I agree not to commence any action or suit related to my employment by FTPS:

1. More than six months after the termination of my employment if the action or suit is related to the termination of my employment; or

2. More than six months after the event or occurrence on which my claim is based if the action or suit is based on an event or occurrence other than the termination of my employment. I agree to waive any statute of limitations to the contrary.

**{¶3}** The procurement function was underneath the legal function in the company's structure. Fiani's direct supervisor was Ned Greene, a chief business services and legal officer, and also a close friend of Fiani's. Shortly after his hiring, Fiani was additionally placed in charge of the company's real estate and facilities management function. FTPS subsequently changed its name to Vantiv before merging with Worldpay in late 2017/early 2018. The merged company operated under Worldpay's name. The merger resulted in duplicative positions that had to be eliminated. It also resulted in the procurement function being placed in the corporate structure underneath the finance department, rather than the legal department.

**{¶4}** While Fiani served as the head of procurement for Vantiv at the time of the merger, a woman named Sarah Willmott filled that same role for Worldpay. Willmott was new to that role and had previously been an IT project manager. Following the merger, Greene was responsible for selecting either Fiani or Willmott to serve as the company's interim global procurement officer. Greene ultimately elected to offer that job to Willmott. Despite his belief that Fiani was a "solid performer" and was qualified for the position, Greene did not believe Fiani could succeed in the role because Mark Heimbouch, the company's chief operating officer, did not think Fiani was the right person for the job and would not accept him.

**{¶5}** Fiani expressed his frustration with Greene's selection of Willmott to Kellie Morton, a senior human resources business partner. During his conversation with Morton, Fiani made allegations of discrimination against several senior officers in the company, including Heimbouch and Stephanie Ferris, who at that time was the company's chief financial officer.

{¶6} Fiani, who was Lebanese, told Morton that Heimbouch was a bigot. He alleged that Heimbouch repeatedly mocked his accent; told him in a meeting not to speak Arabic and to speak English (when he was, in fact, already speaking English); mocked him for being nominated to lead Vantiv's African-American affinity group; and made joking comments about Fiani's cousins constructing a parking garage. With respect to Ferris, he alleged that she had once asked him, "You're an Arab, right?" and followed up by asking him if he had a problem with Israel or with Jewish people. On one occasion, a statue of a camel was left on Fiani's desk.

{¶7} Although Fiani did not ask her to, Morton reported Fiani's concerns to the legal department. Carrie Russell, the company's general counsel, conducted an investigation into Fiani's allegations with the assistance of John Turner, then a human-resources partner. Russell ultimately determined that there was no support for an allegation that Fiani was not given the global procurement role for any discriminatory reason.

{¶8} In the spring of 2018, after it became clear that he would not be given the global procurement role, Fiani was assigned to work with Royal Cole, who ran the company's North American business, on the integration of Vantiv and Worldpay. Willmott ultimately resigned from the company before actually serving in the global procurement role. Greene asked Fiani to step in to fill the role on an interim basis, but Fiani elected to work with Cole instead.

{¶9} Ferris, in her role at that time as chief financial officer, elected to hire someone to serve as a chief operating officer for the finance organization, rather than directly hire someone to serve as head of global procurement. This was a broader role than head of procurement, and Ferris intended for the future chief operating officer to

4

subsequently hire someone for the global procurement position. Ferris selected a woman named Joanna Fielding to fill the chief operating officer role. Fielding ultimately hired an outside contractor, James Berry, to fill the procurement role.

{¶10} Fiani's assignment with Cole was initially offered for a 12-to-18-month period, but the integration work was completed much sooner. In November of 2018, Cole met with Fiani to let him know that the company was terminating his employment. The official date of Fiani's termination was January 1, 2019.

{¶11} Fiani filed a complaint against Worldpay on May 3, 2019, asserting claims for national-origin discrimination, race discrimination, age discrimination, and retaliation. The complaint contained allegations that Fiani was treated differently than similarly-situated employees because of his national origin, race, and age, that he was subject to a hostile work environment, and that his employment was terminated in violation of R.C. Chapter 4112. It further alleged that he was terminated in retaliation for his allegations of discrimination.

{¶12} On September 21, 2020, Fiani filed a motion for leave to file an amended complaint adding a claim for gender discrimination. The motion stated that he had discovered facts during discovery that would support this additional claim. Fiani's proposed gender-discrimination claim alleged that he was discriminated against on the basis of his gender because the company treated him less favorably by selecting Sarah Willmott and Joanna Fielding to head procurement and by terminating his employment in violation of R.C. Chapter 4112. Worldpay filed a memorandum in opposition to Fiani's motion to amend, contending that the motion was futile, untimely, and contradicted facts known and previously testified to by Fiani in a deposition.

5

{¶13} Worldpay filed a motion for summary judgment on September 25, 2020, asserting that all of Fiani's allegations of discrimination fell outside of the contractually agreed upon six-month limitations period contained in his signed acceptance of FTPS's offer of employment. The motion further argued that the actual termination of Fiani, which occurred within the applicable six-month limitations period, was not done with any discriminatory intent or with any retaliatory animus. Worldpay filed a second motion for summary judgment on February 18, 2021, reiterating the argument from its first motion about the contractual limitations period and arguing that Greene's decision in the spring of 2018 to not give Fiani the global procurement role was not discriminatory or retaliatory. Fiani filed a memorandum in opposition to Worldpay's motions for summary judgment.

{¶14} In September of 2021, the trial court denied both motions for summary judgment and overruled Fiani's motion for leave to amend his complaint. A jury trial was held in February and March of 2022. The jury returned a verdict for Worldpay on all claims, and Fiani now appeals.

## II. Motion for Leave to Amend Complaint

{¶15} In his first assignment of error, Fiani argues that the trial court abused its discretion by denying his motion for leave to amend his complaint.

{¶16} A trial court's decision to deny a plaintiff leave to amend a complaint is reviewed for an abuse of discretion. *Maas v. Maas*, 2020-Ohio-5160, 161 N.E.3d 863, ¶ 84 (1st Dist.). "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Garry v. Borger*, 1st Dist. Hamilton No. C-220069, 2023-Ohio-905, ¶ 14, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

6

{¶17} The amendment of pleadings is governed by Civ.R. 15(A), which provides that:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

{¶18} As the Supreme Court of Ohio has recognized, it is preferable to resolve cases upon their merits, rather than upon pleading deficiencies. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). "Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Id.*

{¶19} Relevant factors for the trial court to consider when ruling on a motion to amend include "whether the movant made a prima facie showing of support for the new matters sought to be pleaded, the timeliness of the motion, and whether the proposed amendment would prejudice the opposing party." *Maas*, 2020-Ohio-5160, 161 N.E.3d 863, at ¶ 85. "A trial court properly refuses to grant leave to amend when amendment would be futile." *Id.*

7

{¶20} Fiani's motion for leave to amend asserted that he learned additional information during the discovery process that would support a claim for gender discrimination. The additional, proposed gender-discrimination claim alleged that Worldpay discriminated against Fiani because of his gender by selecting Sarah Willmott and Joanna Fielding to head procurement and terminating his employment in violation of R.C. Chapter 4112.

{¶21} The trial court overruled Fiani's motion for leave to amend, stating that the motion was not well-taken. It found that there was no evidence that the motion was filed in bad faith or for delay, but it provided no further explanation as to the basis for its ruling. A consideration of the factors set forth above leads us to hold that the trial court, despite its failure to provide an explanation for its denial of Fiani's motion, did not abuse its discretion in so ruling.

{¶22} Fiani made a prima facie showing of support for a claim for wrongful termination on the basis of gender discrimination. In support of this claim, the amended complaint alleged that "Defendants discriminated against Plaintiff because of his gender by, including but not limited to, treating him less favorably by selecting Sarah Wilmot [sic] and Joanne [sic] Fielding to head Procurement and terminating Plaintiff's employment in violation of R.C. Chapter 4112." The amended complaint could certainly have gone into greater detail regarding the assertion of gender discrimination, but the law is well-settled that "a plaintiff is not required to prove his or her case at the pleading stage." *Fox Consulting Group, Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 1st Dist. Hamilton No. C-210250, 2022-Ohio-1215, ¶ 7, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

8

{¶23} The record contains no evidence or indication that Worldpay would have been prejudiced if the motion for leave to amend had been granted. Worldpay was already on notice to defend against claims for wrongful termination and discrimination on the basis of race, national origin, and age. And while Worldpay opposed Fiani's motion for multiple reasons, it did not assert that it would suffer prejudice if it had to defend against an additional claim of gender discrimination.

{¶24} We next consider the timeliness of Fiani's motion for leave to amend. The complaint was filed on May 3, 2019, and Worldpay's answer was filed June 7, 2019. The motion for leave to amend the complaint was filed over a year later, on September 21, 2020. This was well past "twenty-eight days after service" of the answer. *See* Civ.R. 15(A). However, the motion was filed during the discovery period, which was set to be open until January 11, 2021.

{¶25} When considering whether the motion was timely filed, we must take into account when the motion was filed in relation to when Fiani became aware of the viability of the additional claim. Fiani alleged in the motion for leave to amend that "[t]hrough the discovery process Plaintiff has discovered facts that support the additional claim as reflected in the Amended Complaint." The motion did not explain specifically what this additional information was or where and when it was discovered, but the record shows that the depositions of Worldpay employees Chris Thompson, Kellie Morton, Stephanie Ferris, Royal Cole, and Mark Heimbouch were taken in August of 2020, approximately one month before the motion for leave to amend was filed.

{¶26} However, the only new facts alleged in the amended complaint were that Fiani had expressed concerns about discrimination on the basis of national origin,

9

race, and gender, and that Joanna Fielding was hired to perform the procurement duties that had previously been performed by Fiani. The record contains evidence that Fiani was *already aware* of this information concerning Fielding prior to the depositions being taken. In his own deposition, taken December 5, 2019, Fiani was asked about who ultimately filled the procurement role. He answered that Stephanie Ferris had hired Joanna Fielding to serve as her chief operating officer, and that procurement would go through Fielding. Fiani further stated that he offered to give Fielding background information about the job, and that she took him up on the offer. Given that Fiani was aware before his employment was terminated that Fielding was hired after Willmott, his motion for leave to amend his complaint to add a claim for gender discrimination was not timely filed. *See McElwee v. Dayton Newspapers, Inc.*, 2d Dist. Montgomery No. 19813, 2004-Ohio-171, ¶ 33 (holding that, where plaintiffs admitted that any new claims were based on facts that been known two years earlier when the original complaint was filed, the claims could have been included in the original complaint and there was no justification for the delay).

{¶27} Fiani asserts on appeal that "while [he] may have known that Wilmott [sic] and Fielding were hired in 2018, not until depositions were conducted, including the Ferris deposition, did Fiani uncover facts showing that the decisions to hire them and fire him were unlawfully *motivated* by his gender." (Emphasis sic.) But this allegation cannot be found in his motion for leave to amend or in the amended complaint itself. Because this argument was not presented to the trial court, we find that on this record, Fiani's motion for leave to amend the complaint was not timely filed.

10

{¶28} But even if the motion had been timely filed, we nonetheless find no abuse of discretion by the trial court in overruling the motion because the amendment would have been futile. Fiani's complaint asserted that he was wrongfully terminated on the basis of various types of discrimination. Fiani reiterated this point in his appellate brief, stating that "all of his claims were based on his wrongful termination." However, the additional facts allegedly uncovered during discovery and the additional claim of gender discrimination as set forth in the proposed amended complaint do not concern or relate to Fiani's ultimate termination by Cole. Rather, they concern the failure to promote him to the role of interim head of global procurement. Based on the absence of evidence tying Fiani's ultimate termination by Cole to gender discrimination, Fiani could not have succeeded on a gender-discrimination claim and the amendment would have been futile.

{¶29} We sympathize with Fiani's frustration over the trial court's failure to provide an explanation for its denial of his motion, particularly where the trial court's ruling was issued approximately one year after the motion was filed. But where the motion was not timely filed and the amendment would have been futile, we find no abuse of discretion by the trial court in denying the motion for leave to amend.

{¶30} The first assignment of error is accordingly overruled.

### III. Attorney-Client Privilege

{¶31} In his second assignment of error, Fiani argues that the trial court erred in overruling his objection to Worldpay's untimely and selective waiver of the attorney-client privilege. He contends that the trial court erred in allowing Worldpay to use the privilege as both a sword and a shield.

11

{¶32} Worldpay asserted the attorney-client privilege throughout the course of the discovery period. The privilege was asserted to prohibit its employees from discussing Russell's investigation into Fiani's assertions of discrimination concerning the failure to promote him to the global procurement role. During Russell's deposition, Worldpay not only asserted the privilege, but assured Fiani that the privilege would not be waived at trial. Despite this assurance, Worldpay later decided after the close of discovery to waive the privilege. Worldpay provided Fiani with Russell's investigation report and offered to reopen depositions at Worldpay's cost. Fiani did not take Worldpay up on this offer.

{¶33} In its amended pretrial statement, Worldpay discussed its decision to waive the attorney-client privilege. In relevant part, it explained:

Fiani will present evidence at trial about Greene's March 2018 decision and Russell's March/April 2018 investigation. He also intends to substantially focus on Worldpay's assertion of the attorney-client privilege related to Russell's investigation to falsely suggest to the jury and Court that Worldpay is hiding the facts.

In light of this, Worldpay decided to waive the attorney client privilege that applied to Russell's investigation so it can respond to Fiani's allegations and present all the facts to the Court and the jury.

{¶34} Worldpay's waiver of the attorney-client privilege occurred in August of 2022. At that time, the trial was scheduled for November of 2022, although the trial was ultimately continued until February 2023. Upon being made aware of Worldpay's intent to waive the privilege and receiving Russell's report, Fiani did not file a motion in limine or move to compel Worldpay to produce additional information that it

believed was omitted from the report. Rather, Fiani objected to the waiver of the privilege for the first time at trial.

{¶35} During opening statements, Fiani's counsel briefly alluded to Russell's investigation. He first referenced Fiani's conversation with Morton and stated that Fiani did not intend to make a complaint about the failure to promote him and Heimbouch's related bigotry because he feared retaliation. Counsel then stated that "a couple" weeks after Fiani's conversation with Morton, Fiani received a call from Russell, resulting in a meeting where he laid out his concerns regarding Heimbouch and asked her not to conduct an investigation because he feared retaliation. Counsel further told the jury "the evidence is going to show that that's exactly what happened, retaliation."

{¶36} Defense counsel, during opening statements, started to reference Russell's investigation into Fiani's allegations of discrimination. Fiani immediately objected. During a sidebar, Fiani's counsel explained that Fiani elected not to take Worldpay up on its offer to reopen depositions because Fiani was concerned that doing so would delay the trial. Thus, counsel argued that it would be unfair to allow Worldpay "to introduce evidence as to the matters on attorney-client privilege throughout litigation." In response, defense counsel argued that Worldpay offered to waive privilege when the company realized that Fiani "was going to make a significant issue about the company asserting attorney-client privilege and about the investigation." Counsel explained, "This will be a significant issue in the case as the plaintiff just explained during their opening, and the defense has to be able to explain what happened in the investigation." After hearing arguments from counsel, the trial

13

court overruled the objection. The court determined that if anything about the investigation is relevant, then "it is probably going to come in."

{¶37} Fiani contends that the trial court erred in overruling his objection to Worldpay's waiver of the attorney-client privilege. He argues that we should review the trial court's decision to allow defendants to waive the attorney-client privilege de novo. He relies on this court's holding in *Shell v. Drew & Ward Co., L.P.A.,* 178 Ohio App.3d 163, 2008-Ohio-4474, 897 N.E.2d 201, ¶ 10 (1st Dist.), quoting *Roe v. Planned Parenthood Southwest Ohio Region,* 173 Ohio App.3d 414, 2007-Ohio-4318, 878 N.E.2d 1061, ¶ 18 (1st Dist.), *affirmed on other grounds,* 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, that "[t]he management of the discovery process is reviewed under an abuse-of-discretion standard, but questions of privilege, including the propriety of disclosure, are questions of law and are reviewed de novo."

{¶38} Worldpay, on the other hand, frames the issue not as a dispute over privilege, but as a dispute over the propriety of an evidentiary ruling by the trial court. It accordingly contends that the trial court's admission of evidence concerning the investigation should be reviewed for an abuse of discretion. Worldpay relies on both the well-established law that the admission or exclusion of evidence is within the trial court's discretion, *State v. Summerlin*, 1st Dist. Hamilton No. C-160539, 2017-Ohio-7625, ¶ 35, and the proposition of law that a trial court's disposition of discovery issues must be affirmed absent an abuse of discretion, *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998).

{¶39} We agree with Worldpay and hold that an abuse of discretion is the appropriate standard of review to apply in this situation. Critical to our decision is the fact that the issue in this case is not whether Russell's investigation report is subject

to protection under the attorney-client privilege—all parties agree that it is. Rather, the issue is whether the trial court erred in allowing Worldpay to waive the attorney-client privilege and, correspondingly, whether it was error to admit Russell's investigation report.

{¶40} *Total Quality Logistics, LLC v. BBI Logistics LLC*, 12th Dist. Clermont No. CA2021-04-012, 2022-Ohio-1440, is instructive on this point. In *Total Quality Logistics,* the trial court held that a party asserting the attorney-client privilege had waived the right to assert the privilege by making only boiler-plate assertions of privilege, failing to provide supporting evidence with respect to the assertion of the privilege, and submitting deficient privilege logs. *Id.* at ¶ 10. The Twelfth District applied an abuse-of-discretion standard when reviewing the trial court's actions. It held that "[a] trial court has discretion to determine waiver [of privilege] on a case-by-case basis." *Id.* at ¶ 23. We accordingly review the trial court's overruling of Fiani's objection to Worldpay's waiver of the attorney-client privilege for an abuse of discretion.

{¶41} Fiani argues that Worldpay used the attorney-client privilege as both a sword and a shield against him by failing to disclose significant portions of Russell's investigation and report. While the asserted proposition of law is correct, namely that "[t]he attorney-client privilege cannot at once be used as a shield and a sword," the record does not support Fiani's assertion that Worldpay used the attorney-client privilege in this manner or that it failed to disclose certain documents from Russell's investigation. *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 41, quoting *In re Lott*, 424 F.3d

446, 454 (6th Cir.2005), quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991).

{¶42} Fiani alleges that Worldpay failed to disclose Russell's notes from her interview with Ferris, as well as details from conversations between Russell and Greene regarding his decision to give the procurement role to Willmott. Fiani further contends that the investigation report did not indicate whether John Turner, who assisted Russell in the investigation, interviewed Heimbouch, and that it did not contain notes from Turner's interview with Fiani's former coworker Anup Nair regarding whether Nair was subject to discriminatory treatment.

{¶43} Russell testified that it was her practice to type her handwritten notes in an email to herself and then shred the handwritten notes. Accordingly, any handwritten notes from Russell's interview with Ferris would have been shredded, and the record does not support Fiani's assertion that Worldpay failed to disclose them. The same is true of Fiani's assertion that Russell failed to disclose details about her conversations with Greene. Russell testified that she did not take notes every time that she met with Greene.

{¶44} With respect to Fiani's assertion that Russell's report did not indicate whether Turner had interviewed Heimbouch, Russell's testimony answered this question in the negative. While Turner did not interview Heimbouch, he did give Russell his opinion regarding Heimbouch's general character, stating that he had never heard Heimbouch treat anyone in a discriminatory manner.

{¶45} Fiani's remaining allegation is that the report that he was provided did not contain information about Turner's interview with Nair. Nair was a former employee that left Worldpay. After Fiani mentioned Nair's name to Russell, she asked

Turner to reach out to him. Turner testified at trial that he spoke to Nair "and asked questions around the allegations in the claim that [Russell] had filled me in on." He further testified that he had a debrief about his conversation with Nair with several Worldpay employees, including Russell and Greene. Fiani's counsel asked Turner if he took notes during his conversation with Nair or in his subsequent debrief session with Russell and Greene. Turner responded, "I don't remember." He was then asked if he was aware if any notes from these conversations still existed, to which he responded, "I don't know of any." Russell testified that Turner reached out to Nair at her request, but her testimony did not address whether Turner took notes during that conversation. We accordingly find that the record does not support Fiani's allegation that Worldpay failed to include notes from Turner's interview with Nair in Russell's investigation report.

{¶46} On this record, we cannot hold that Worldpay used the attorney-client privilege as both a sword and a shield by failing to disclose portions of Russell's investigation.

{¶47} Fiani urges this court to hold that a party may not invoke the attorney-client privilege during discovery and "subsequently waiv[e] it at the eleventh-hour." We decline to impose such a bright-line rule.

{¶48} While we can foresee circumstances in which it would be inappropriate to assert the attorney-client privilege during discovery and then ultimately elect to waive the privilege at a later date, we hold that it was not unreasonable for Worldpay to do so in this case. Worldpay initially took the position that all of Fiani's discrimination claims investigated by Russell were outside of the six-month limitations period that Fiani contractually agreed to when he signed the offer of

17

employment from FTPS. Heimbouch's and Ferris's allegedly discriminatory actions occurred in the spring of 2018 or before, and Fiani's lawsuit was not filed until May of 2019. Worldpay accordingly sought to protect Russell's investigation report and asserted the attorney-client privilege. Worldpay filed a motion for summary judgment based on this same argument. The trial court ultimately denied the motion for summary judgment in September of 2021. In August of 2022, after learning that Fiani was going to make a significant issue at trial about the company's assertion of the attorney-client privilege, Worldpay elected to waive the privilege because it did not want a jury to think that it was hiding any information. Worldpay could have certainly made the decision to waive the privilege sooner. But at the time the waiver was made, there were still three months remaining before the trial was scheduled (and, as a result of the trial being continued, the waiver occurred six months before the trial actually took place).

{¶49} After electing to waive the attorney-client privilege, Worldpay sent Fiani a letter informing him of its intent to do so. Worldpay also offered to reopen depositions at its expense. Worldpay again set forth its intention to waive the attorney-client privilege in its amended pretrial statement. Fiani did not file a motion in limine to prevent Worldpay from waiving the privilege or from admitting the investigation report at trial. Nor did he file a motion to compel any parts of the investigation report that he believed were not disclosed.

{¶50} Under these circumstances, we find no abuse of discretion in the trial court's decision to overrule Fiani's objection to Worldpay's waiver of the attorney-client privilege. The second assignment of error is overruled.

## IV. Conclusion

{¶51} Having overruled Fiani's assignments of error, we accordingly affirm the trial court's judgment.

Judgment affirmed.

**BOCK, P.J.,** and **KINSLEY, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.